# Earl *et al. versus* Champion.

1. The property of a husband is not to be covered up or withheld from creditors, upon equivocal, suspicious, or doubtful evidence of the wife's right to it.

2. A plain and satisfactory case must be made out before the wife can hold property against creditors.

3. A parol marriage settlement of personalty is not *ipso facto* void.

4. Circumstances in this case which required the question of wife's ownership to go to the jury.

5. Tripner *v.* Abrahams, 11 Wright 228; Flick *v.* Devries, 14 Id. 266, approved.

March 28th 1870. Before Thompson C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Cameron county:* No. 78, to July Term 1869.

This was an action of ejectment, commenced April 22d 1868, by John B. Champion, against John Earl and Catharine Earl his wife, and others their tenants, for 16 lots in the town of Emporium. The plaintiff claimed the lots as purchaser of them at sheriff's sale, as the property of John Earl; the allegation of the defendants was that they belonged to the wife.

On the trial May 8th 1869, before White, P. J. the plaintiff gave in evidence, articles of agreement dated April 1st 1865, between the Philadelphia and Erie Land Company and Mrs. Earl, for the lots in dispute for $600; $150 payable on the delivery of the contract, and $150 yearly, until the whole should be paid: also,

[Earl *v*. Champion.]

a judgment in his favor October 19th 1866, against Earl for
$791.68 : also a power of attorney of same date to the prothono-
tary authorizing the entering of the above judgment, and the selling
of the lots to the plaintiff, with condition that upon the payment of
the judgment in eight months the conveyance should be void, other-
wise execution to issue : also notice to the land company from John
Earl that he had sold his interest in them, and not to " give a title
to any person except John B. Champion :" also the record of
the following judgments against John Earl:

| | | |
|---|---|---|
| Joel D. Gillet, - - | June 2d 1856, | - - $100.00 |
| Wharton Township, - | August 7th 1856, | - - 97.00 |
| Godfrey & Co., - - | February 26th 1857, - | - 266.44 |
| Potter County, - - | June 18th 1857, | - - 39.74 |
| W. W. Wright, - - | December 29th 1857, - | - 145.13 |
| William Elliott, - - | December 29th 1859, - | - 209.38 |
| Beidleman & Haywood, | December 29th 1859, - | - 291.53 |
| B. Leiber, - - - | August 14th 1865, | - - 422.67 |

The plaintiff then gave in evidence executions on his judgment
of October 19th 1865, under which John Earl's interest in the lots
in question were sold to him, and the sheriff's deed to him ac-
knowledged January 23d 1868.    J. W. Phelps, the agent of the
land company, testified that he received $150, the first payment
on the contract, from John Earl ; $50 of this was an order from
D. Callahan : that Earl brought him an order May 1st 1867, from
H. Crittenden, for $239.26 which Phelps accepted and endorsed
on the contract.

The plaintiff here closed.

The defendants examined John Earl : he testified : * * *    The
$50 was paid by an order on Mr. Phelps by Daniel Callahan.    I
got it of my wife ; he had borrowed money of my wife several times,
and in payment of it he gave this order on Mr. Phelps.    I made
the second payment to him by request of Crittenden ; $239.26
was Crittenden's order on Mr. Phelps ; he acknowledged to owe
Crittenden that amount ; I had no interest in the order, my wife
had.    Catharine Earl and I were married in March 1861 ; there
was a marriage settlement made on Mrs. Earl at that time ; I had
$2500 ; I agreed to give her $1000 ; was before the marriage ;
don't know that any other person was present ; were others pre-
sent afterwards.    I told her I would set apart $1000 towards
bringing up the children ; she then consented to marry me. I have
let her have money at a good many times ; don't think I have paid
up the $1000 ; have paid $200, $50, in all to $500, or $700, from
1861 to this time, or to 1865—taking this article was one. I had
no interest in it ; it was her own money.    The money I let her
have first ; she loaned it ; I borrowed some of it myself ; she had
the use of it ; I got the $100 of her that I paid Phelps first ; it
was her money, she got it of George Warner. * * * On my way to

[Earl *v.* Champion.]

Philadelphia I borrowed $300 of my wife and gave her my obligation for it.  I got the money of Young, Finley & Co., of Williamsport.  When I returned I left $400 or $500 to her; took $300 of her when I went to Philadelphia; assigned her a contract for land, that is with Mr. Crittenden; was to pay the $1000 along as she needed it; might have had some judgments against me. Have receipts for the judgments read in evidence against me, most of them.  I got the money of her that I paid on the contract.

Dan. Callahan testified for defendants: I remember this order. It was given for borrowed money; borrowed of Mrs. Earl; I gave the order on Mr. Phelps.

Henry Crittenden testified for defendants: I know Mrs. Earl had some property and money of her own; I let her have $300 in money, part when she was in Potter and the residue after she came here; she kept a boarding-house for me; let her have part of it then; the whole amount I gave her was $300; can't tell what was done with it; let Mrs. Earl have it; she took a piece of land up the Portage and then sold the land.  The $300 was for work she did for me for two years.

Judge White, after referring to the facts, charged: * * * "But the articles of agreement for the lots were between the land company and Mrs. Earl, and Earl testifies that the $150 receipted at the date of their execution, although paid by him, was furnished by Mrs. Earl.  How did she obtain this?  As between her husband and his creditors, property purchased for her belongs to her husband, unless she can prove clearly that the consideration paid for it even if she made the payment herself, consisted of money or property which belonged to her while a single woman, or had accrued to her after marriage by devise, descent, gift or purchase independently of her husband.  Any property purchased by or for her, and paid for with money or its equivalent furnished by her husband, would not be exempt from claims of his creditors, unless derived from a separate estate settled upon her by him in consideration of marriage; and not then as against claims of creditors to whom he was indebted at the time of such settlement.  [But a parol contract, such as is proved by Earl, resting in the knowledge of the parties alone and to prove which no other evidence has been produced except Earl's, a contract to settle on Mrs. Earl $1000, only $40 or $50 of which was paid before their marriage, and the residue of which was stipulated to be paid as she might require it, cannot be a valid legal settlement and binding on Earl's subsequent creditors who had no knowledge of it, and since if it were adjudged to be a valid settlement, the evidence of Earl unsupported cannot be sufficient in law to prove it,] when sought to be used to hinder, delay or defeat his creditors." * * * After referring especially to Earl's testimony, the judge proceeded:—

15 P. F. Smith—13

[Earl *v.* Champion.]

["This is not such clear and distinct evidence as is necessary to show that the payment was made out of funds derived from her own separate estate, and does not; sustain her title to the lots in controversy.] Where property is claimed by a married woman she must show by evidence which does not admit of a reasonable doubt, either that she owned it at the time of her marriage or acquired it afterward by gift, bequest or purchase. If by purchase the burden is on her to prove distinctly that she paid for it with funds which were not furnished by her husband. Under all the facts given in evidence the jury are instructed to return a verdict for the plaintiff."

The verdict was for the plaintiff.

On the removal of the case to the Supreme Court, the defendants assigned for error the parts of the charge in brackets, and the instruction of the court to find for the plaintiff.

*J. B. Newton* and *R. Brown,* for plaintiffs in error.—The case should have been submitted to the jury: Tripner *v.* Abrahams, 11 Wright 220; Gamber *v.* Gamber, 6 Harris 363; Flick *v.* Devries, 14 Wright 266; Mellinger *v.* Bausman, 9 Id. 527; Express Company *v.* Wile, 14 P.F. Smith 201; Aurand *v.* Shaffer, 7 Wright 364; Robinson *v.* Wallace, 3 Id. 129. An ante-nuptial contract carried out by the husband paying over the money after marriage is not void as to creditors. Magniac *v.* Thompson, Baldwin 344. A post-nuptial contract is not void *per se,* and the jury are to judge: Larkin *v.* McMullin, 13 Wright 29. An ante-nuptial contract may be made by parol: Gackenbach *v.* Brouse, 4 W. & S. 546.

*C. B. Curtis,* for defendant in error, cited Aurand *v.* Shaffer, *supra ;* Thompson *v.* Dougherty, 12 S. & R. 449.

The opinion of the court was delivered, April 4th 1870, by

AGNEW, J.—The three errors assigned in this case resolve themselves into one. The court instructed the jury under all the evidence to return a verdict for the plaintiff. The only question is whether the evidence ought to have gone to the jury. If insufficient, what the court said in their charge would be immaterial, the case being properly taken away from them. Had the case gone to the jury a statement of the quality or degree of the evidence would have been important as an instruction to guide them. We have said in many cases that the evidence must be clear and satisfactory—clear and full proof—clear and unequivocal—it must exclude reasonable suspicion that the property was the husband's. Many of the cases are collected in Tripner *v.* Abrahams, 11 Wright 228. To these I may add Baringer *v.* Stiver, 13 Wright 129; Flick *v.* Devries, 14 Wright 266; Curry *v.* Bott, 3 P. F.

[Earl *v.* Champion.]

Smith 400. These are but forms of expression to denote that the property of a husband is not to be covered up or withheld from creditors upon equivocal, suspicious or doubtful evidence of a wife's right to it. The family relation is such and the probabilities of ownership so great on part of the husband, that a plain and satisfactory case should be made out before the wife can be permitted to hold property against honest creditors. But the language of the cases is rather an approximation than a definition. It is difficult to define accurately that which is merely a mental operation, and to express with precision the degree of conviction forced upon the mind by evidence. Hence, where a judge said to a jury that the law requires a wife "to come into court with full proof such as will relieve reasonable doubts—if you pause, or doubt upon her evidence, your verdict should be given to the plaintiff "— it was held to be too strong a description of the degree of proof in that case: Tripner *v.* Abrahams, 11 Wright 228. In Flick *v.* Devries, 14 Wright 267, the same judge himself laid down the rule thus : "We require no unreasonable amount of proof. Absolute demonstration is no more to be looked for in this class of cases than in other lawsuits, and where evidence is offered from which the conclusion can fairly be deduced, it ought to be submitted to the jury, who often decide on less than demonstrative proofs." In the still more recent case of Welch *v.* Kline, 7 P. F. Smith 432, our Brother Sharswood said, that the whole question of exclusive ownership of the wife in the property derived from her own means, and applied by her to the purchase of it, is one for the jury, which it would be error to withdraw from them.

The opinion of the judge in the court below, is an excellent presentation to the jury of the force and effect of the evidence, but he went too far when he finally withdrew it altogether from their consideration. The difficulty of the case lies chiefly in the fact that it depends greatly on the credibility of the husband, the principal witness, a matter falling within the province of the jury. He testified to facts tending to show that the wife's separate estate paid for the lots. He swore to an ante-nuptial settlement, by which she became entitled in consideration of marriage to receive from him $1000, and did receive from him from $500 to $700. He also testified that the judgments against him from 1856 to 1859, relied on to show a motive on his part to cover up his property in the name of his wife, had chiefly all been paid, a fact deriving some corroboration from their long standing without an effort to collect them. He is also corroborated to some extent as to the proportion of a separate estate on part of Mrs. Earl, by the testimony of Callahan and Crittenden. The contract of purchase of the lots was in the name of Mrs. Earl, and if the testimony of Earl was believed, there was evidence of the possession of a sepa-

[Earl *v.* Champion.]

rate estate by Mrs. Earl, and of its application to the payment of a considerable part of the purchase-money, A *parol* marriage settlement of personalty is not *ipso facto* void: Gackenbach *v.* Brouse, 4 W. & S. 546; Magniac *v.* Thompson, 1 Baldwin 344; Larkin *v.* McMullen, 13 Wright 29. Whether the arrangement sworn to by Earl was a fraud in fact, was a question for the jury. The conduct of Earl and his control of the property tended to weaken his credibility. Under these circumstances it was properly the province of the jury to determine what were the actual facts of the case, under instructions as to the degree of evidence necessary to enable the wife to sustain her right to the property. The judgment is therefore reversed and a *venire facias de novo* awarded.