CHIEF JUSTICE ROBERTSON
delivered the opinion of the court.
'William C. Burgess, au old bachelor sixty-five years of age, who had by industry and economy accumulated a competent estate, consisting of his homestead of about six hundred and fifty acres of land in Scott County, Ky., of eight slaves (three adults of each sex and two minor children), and of personalty appraised at $7,123.69, devised his farm and slaves and stock and farming utensils and furniture to his adopted son, J. K. Burgess, and nominated two of his neighbors, Samuel N. Green and William Gano, his executors. Gano declined to act, and Green alone qualified as sole executor. Intending that the son, then about fifteen years of age, and two other favorite young men of nearly the same age, should remain on the farm, the testator made the following provision: “My administrator shall oversee and take charge of my farm, and keep the negroes employed on the same until my son, J. K. Burgess, arrives at twenty, years of age; and I hereby empower (my executors) to manage all my property as aforesaid, as I myself could do were I alive and present.”
*265 Under the advice of professional counsel, Green soon removed to the farm thus devised, and took with him his wife, his minor son, a Miss McAfee, two negro boys, five and eight years old, and sixteen head of cattle and horses and for cultivating the farm he reserved from the sale of the testator’s personalty eight horses, two yoke of oxen, fifteen head of sheep, fifteen hogs, four milch cows, three beds and furniture, the stock of provisions on hand, the household and kitchen furniture, and a portion of the farming implements. After managing this property by tillage, pasturage, and buying stock to be grazed and fed, and also selling it, until J. K. Burgess attained twenty years of age, a period of about five years, he surrendered to him the farm and other things on it, except some articles not considered necessary for his use.
After a settlement in the county court of the executorial accounts, not including the farming operations, the results of which had not been disclosed, this suit in equity was brought by J. K. Burgess against Green, impeaching that settlement, and calling for a discovery and settlement of the farming concern. The answer disclosed the fact that this latter account, as then for the first time rendered, after allowing Green what he charged for his services, did not make both ends meet, but left the farm in debt.
The circuit court, adjudging that Green had no right to occupy the farm as executor, referred the case to a commissioner for settlement, on the basis of unauthorized tenancy, and directed him to charge Green as hirer and renter.
The report, on that scale, brought Green in debt to Burgess to the amount of $6,785.33, and neither party excepted to that report. Yet the successor of the judge who laid the basis of settlement according to which the report was made adjudged to Green against Burgess the sum of five thousand one hundred and thirty-two dollars, and this appeal calls for a reversion of that judgment.
*266 The foundation of such a judgment is not disclosed in the unopposed report by the commissioner, or elsewhere in the record, even though the judge seemed to think a charge by the appellee, in the form of counter-claim for his services, of the alleged value of three thousand eight hundred dollars, was admitted by not answering it, which the Code does not require as to questions of value.
While we can not concur with the first circuit judge in his opinion that a peremptory power, as in this case, leaving no discretion except in the mode of exercising it, as in all cases of executors, we are yet satisfied that the appellee, in settling, as he did, on the appellant’s farm, acted in good faith in the discharge of what he was advised to be his duty, and ought not therefore to be considered as an usurper or intruder, nor charged against his will as an ordinary or conventional tenant. Still it seems to us that the testator never contemplated a residence by his chosen executors and their families, or by either of them, with his family, on the devised farm, but expected their supervision only with the aid of an employed overseer; and we feel quite sure that he never expected that the appellee would keep any of his own stock on the appellant’s farm, or employ its working force in cultivating and improving his own farm, as he did occasionally; nor that he would take, as he did, timber from the appellant’s farm for the use of his own.
All this may have been done in good faith, but it was unauthorized.
And it is a remarkable circumstance that while the appellee used both farms, and the appellant’s as rather subservient to his own, yet there is no intimation of loss on his own, or of the amount of its profit. This is entitled to consideration hereafter.
The testator intended that the appellant’s estate should be prudently managed by itself and on its own resources for the *267 appellant’s benefit alone. It was not so managed. And this may afford a clue to the strange result, which may have honestly occurred.
But, according to the facts, we can not say that the family of the appellee increased, unnecessarily or at all, the expense of his required superintendency, or that he in any respect did what he knew to be wrong. But we must say that he seemed to aim more for profit for himself than for the appellant.
Then, difficult as it is "to adjust the farming concern with sure justice or precise accuracy, we think that the most reasonable and proximate mode of adjustment is to charge the appellee with what he ought to have made by such management, as the testator required and expected, and to allow him the true value of his services, living as he did and acting as he did, and qualified just as he may in fact have been for such a trust. And on the return of the case to the circuit court a commissioner must investigate this branch of the case on the facts and pleadings as they are, or such supplemental facts and pleadings as the parties may prefer. And as the judgment appealed from is essentially different from any result which the prescribed proof can produce, and evidently more prejudicial to the appellant, it is reversed, and the cause remanded for further proceedings, as indicated in the foregoing opinion.