## No. 1140.

### SUCCESSION OF MRS. MARY A. MYRICK.

#### PROVISIONAL ACCOUNT AND OPPOSITIONS THERETO.

An administrator is not compelled to sell the working animals to pay the debts apart from the plantation. They are immovable by destination, and if they die during the term of the administration the administrator is not to be charged with their value in the absence of fault or negligence on his part.

Nor should an administrator be charged with the annual rents of the plantation, where, after the proper efforts, he has been unable to lease the plantation to a suitable tenant, and has been compelled to work the place on account of the succession. In such case he is subject to no charge for rents or for failure to make adequate crops where it is not shown that such failure is attributable to his fault.

APPEAL from the Twenty-seventh District Court, Parish of Richland. *Montgomery, J. ad hoc.*

*R. G. Cobb* for the Administrator, Appellant.

*Wells & Toler* for Opponent Watson.

*Potts & Hudson* for Tutor, Myrick:

1. The administrator should, within ten days after his appointment, advertise and sell all the personal property of the succession. C. C. 1163, 1049, 1051.

2. If he fail to sell when required by law to do so and the property wastes or perishes, he must account or pay for the property.

3. He should lease the real estate if not necessary to sell it and account for the revenues If he made no effort to lease and use the property himself, he must pay customary rents.

4 The wife cannot bind herself nor her property for the debts of her husband. C. C. 2398; 33 Ann. 1009 and case.

5. The law forbidding such contracts is prohibitory. 14 Ann. 9 L. 590.

6. Married women are never estopped when sought to be made liable for the debts of their husbands, and many show the true nature of the contract. 14 Ann. 168; 16 Ann. 11; 12 Ann. 852; 12 R. 84; 1 Ann. 429; 2 Ann. 756; 14 Ann. 169; 4 R. 508; 33 Ann. 1009.

7. The heirs have all the rights of the deceased. C. C. 945; 7 R. 183; 15 Ann. 528; 19 Ann. 75; 33 Ann. 1009.

8. Neither can the wife indulge in wild and ruinous speculations and bind her property therefor. 34 Ann. 976; 16 Ann. 214; 29 Ann. 75.

*M. J. Liddell* for Opponent Slayden :

1. The doctrine of estoppel is applicable to married women whenever they seek to perpetrate deliberate frauds. 33 Ann. 626; 37 Ann. 327.

2. An estoppel which binds the deceased married woman, will bind her legal heirs. 1 Green, § 523.

3. Where a married woman has compromised a pending litigation, and confessed judgment in favor of one who is a solidary mortgage creditor of herself and unmarried brother whereby she obtains the reduction of her debt and the surrender of the mortgage notes, which she uses in purchasing her brother's entire landed estate; her nephew and niece claiming as her heirs at law will be estopped from denying the consideration of the confession of judgment.

4. Wherever a person by declarations and acts induces another to believe in a certain condition of things, or to change or alter his position for the worse, neither that person or his heirs will be heard to deny his acts or declarations so acted on. 26 Ann. 289; 2 Ann. 500; 26 Ann. 298; 28 Ann. 138; 30 Ann. 53; 32 Ann. 1103; 33 Ann. 624; 33 Ann. 408; 38 Ann. 324; Big on Stoppel, 473, 477.

5. A married woman with her husband's consent may become surety for any other person. 2 Ann. 903.

6. A married woman may become surety with her husband's consent for a person with whom he is engaged in a partnership. 33 Ann. 924; 4 Ann. 377; 19 Ann. 48; 2 Ann. 903.

7. The right to annul a confession of judgment on the part of the wife, given with the husband's consent, for the reason that the judgment confessed was for a community debt is a right personal to the wife or her forced heirs, and cannot be exercised by those whom the law calls to the inheritance in default of ascendants or descendants. 5 Ann. 369; 3 Ann. 426.

The opinion of the Court was delivered by

TODD, J. Mrs. Mary A. Myrick died in the parish of Richland in 1880, and her surviving husband, Benj. Myrick, was appointed administrator of her succession the same year.

On the 26th of November 1884, the administrator filed a provisional account of his administration. This was opposed by the legal heirs of the deceased—minors acting through their tutor, Ed. Myrick—also by two creditors, Slayden and Watson.

I.

There were certain grounds of opposition urged by both heirs and creditors.

They were: 1st. Charging the administrator with the loss of a number of working animals that had died during the term of his administration and valued at $470, and also for 25 head of cattle that likewise died; and 2d. With five years' rentals of the plantation at $1500 per annum.

It is not charged that the mules and cattle died from neglect of the administrator—and such was not the case; but that he was liable for their value because he had failed to sell them seasonably to pay the debts of the succession.

The administrator took charge of the plantation stocked and ready for cultivation. There was little or no movable property, strictly speaking, belonging to the succession. The mules, which it is contended he should have sold in ten days after his appointment, were the working animals of the plantation, and therefore immovable by destination—in legal contemplation, a part of the plantation. It was no more the administrator's duty to have sold these working animals and small stock of cattle than it was to have disposed of the farming implements, mill, gin stand, machinery, and thus denude the plantation of everything required for its successful cultivation.

It was his duty to have leased the plantation if he could, but we are satisfied from the testimony of the administrator and of Ed. Myrick, the tutor of the opposing heirs, that this was impossible. The plantation contained at least 400 acres of open land—a large plantation for that section of the country, inhabited principally by men of small means, who, as a general rule, had more land than they could cultivate themselves.

The situation was such that the administrator was compelled to cultivate the plantation himself or abandon it to waste and ruin. He adopted the former and doubtless wise alternative to cultivate it himself on account of the succession, which he did; and though it resulted unfavorably and produced no revenue for the succession, yet it preserved this valuable in good condition and saved it from great injury, if not the total ruin that might have resulted from its abandonment.

Besides, it was entirely within the power of the heirs, who were present and represented by their tutor, and the creditors, who are now making their complaint for the first time, to have had this property sold had they desired it, by making application therefor and procuring the required order for its sale; but they were silent all those years, uttering no disapproval and evidently acquiescing in the course pursued by the administrator.

We find no reason and know of no law, *under these circumstances,* that would compel the administrator to pay for the mules and cattle that died, or for the rent of the plantation; and the judgment of the lower court, so far as it imposes the former liabilities upon him, must be reversed.

II.

The administrator asked credit in his account for certain privileged debts and necessary charges paid by him. They consist mainly of the expenses of last illness, of funeral expenses, law charges, taxes, blacksmith's account for repairing machinery, etc., amounting in the aggregate to $1086.28. These items were not opposed and were accompanied by proper vouchers, and their correctness proved by direct testimony, and yet they were rejected. This error must be corrected and the proper credit given for these items.

III.

The administrator has placed in his account as a just claim against the succession a judgment against the deceased, rendered on her confession for $3,600, subject to a credit for $1,950, in favor of Beaumont, Fakes & Co., and then held by W. J. Slayden under assignment from them.

For several years after his marriage, the plantation in question was cultivated by Myrick on his own account. That was before his wife had obtained a judgment separating her in property from him. By an examination of the record of the proceedings in the suit wherein Slayden's judgment was rendered, it will appear that the consideration of the judgment was a debt of her husband's. It was an account for advances made to the husband of plantation supplies, etc., whilst a community existed between the spouses and when Myrick was cultivating the plantation on his own account. Mrs. Myrick, according to this record, owed no part of the debt for which she confessed judgment. It further appears, however, from the evidence in the record that in 1871, Myrick, who had been cultivating the plantation on his own account, formed a planting partnership with his brother-in-law John F. Raines, under the firm name of Myrick & Raines, who continued planting together for

several years. As collateral security for debts owing by this firm, Mr. Myrick and John F. Raines executed their note *in solido* for $4,000 in favor of Beaumont, Fakes & Co., the factors of the planting partnership of Myrick & Raines, secured by mortgage.

The account for supplies for which Mrs. Myrick confessed judgment was in part the consideration for which this mortgage note was given. At the date of this judgment, Jno. F. Raines was dead, and his succession was under administration, and his one-half interest in the plantation was to be offered for sale. The creditors of the firm mentioned, Beaumont, Fakes & Co., agreed that if Mrs. Myrick would confess the judgment in their favor above mentioned, that they would surrender to her the mortgage note of $4,000 of herself and brother they held, and also a like one of $500. This was done, and with these Mrs. Myrick purchased the one-half interest of her deceased brother in the plantation.

Under these facts, a special plea of estoppel is urged against the right of Mrs. Myrick or her heirs repudiating the judgment confessed by her or questioning her liability under it.

It is true that Mrs. Myrick by confessing judgment for this debt, though a debt she did not owe, obtained the means by which she acquired half interest of her brother in the plantation—in other words she exchanged her confessed judgment for the notes which proved available in her hands to secure for her property of value surpassing the amount of the judgment she had confessed, thus realizing full and complete consideration for it. We are convinced that the heirs of Mrs. Myrick cannot now consistently deny that the judgment should be recognized as valid and binding against her; and that the same was properly reported in the administrator's account as a valid debt against her succession subject to the credit stated. 34 Ann. 1171; 37 Ann. 679. This credit we see no reason to reduce as asked to do in the motion to amend.

### IV.

There is a claim allowed by the account in favor of R. U. L. Watson. It was for a number of mules and wagon bought of Huson by Mrs. Myrick, for which she executed her obligation to deliver ten bales of cotton after she was separate in property from her husband. The debt is a just one and the deceased was clearly liable for it.

There was also a claim for $860, in favor of Thomas Jones, recognized in the account as a just debt against the succession. We are satisfied that the debt is a just one. The creditor, however, moves an amendment to the judgment because the same allowed only the prin-

cipal.   He is entitled to the amendment sought, allowing legal interest from 1st of January, 1880.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be annulled, avoided and reversed :

1.   In so far as it rejects the credit claimed by the administrator for the working animals and the cattle that died during the term of his administration, $470.

2.   In so far as it rejects the credit claimed for the privilege debts and necessary charges aggregating $1,186.28.

In so far as it fails to allow interest on the claim of Thomas Jones for $860, on which legal interest is now allowed from the 1st of January, 1880.

4.   In so far as it charges the administrator with the depreciation in the value of the mules on hand, $114; and that in all other respects the judgment appealed from be affirmed, opponents to pay costs of their respective oppositions in both courts.

---

## ON REHEARING.

POCHÉ, J.   After a second hearing of this case and a second examination of the record, we reach the conclusion that we had committed no error in our previous opinion.

It is, therefore, ordered that our decree remain undisturbed.