WILLIAM P. WILLIS et al., Respondents, *v.* AURELIUS S. SHARP, Executor, etc., Appellant.

After judgment in this action for the amount claimed by plaintiff for goods sold to defendant in the carrying on of a business as directed by the will of his testatrix, he being insolvent, which judgment directed defendant, as executor, to pay the amount out of the property of the estate in his hands, an order was issued, on motion of plaintiff, appointing a receiver and directing defendant to deliver the whole estate in his hands, as executor, to such receiver, who was required to pay plaintiffs' judgment, and to hold the balance of the estate subject to the further order of the court. It was shown, in opposition to the motion, that at the time of the death of the testatrix she owed a large amount of debts and her estate was insolvent. *Held,* that the order was erroneous; that plaintiffs could only collect their judgment in the modes prescribed by law, *i. e.,* upon settlement of the estate in Surrogate's Court, or by proceedings in that court under the Code of Civil Procedure (§§ 1825, 1826, 2717, 2718).

*It seems* that creditors, having claims at the time of the death of a testator, are not bound by a direction in the will for the establishment or continuance of a business after the death, but have the right to have the estate applied, as soon as the forms of law will permit, upon their debts, and unless they have assented to the carrying on of the business they have the right to insist that the estate, as it existed at the time of the death, shall be used for the payment of their claims to the exclusion of debts subsequently contracted by the executors, while the creditors of the business, if it prove successful, are alone entitled to the increase.

*It seems,* also, if the business was carried on by the executors with the assent of the original creditors, they and the creditors of the business are entitled to share, *pro rata,* in the whole estate.

*Willis* v. *Sharp* (46 Hun, 540) reversed.

(Argued June 19, 1889; decided October 8, 1889.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 13, 1887, which affirmed an order of Special Term appointing a receiver.

Fida C. Sharp died in April, 1885, leaving a will in which she nominated her husband and Elsie Sharp as executors, and after the payment of her debts gave, devised and bequeathed all the residue of her property to her executors, to be held by them in trust, the income thereof to be used for the maintenance and education of her son Harry until he should arrive

at the age of twenty-five years, when the property was to be divided equally between her husband and son. The fourth clause of the will is as follows:

"It is my wish, and I hereby direct, that after my death some legitimate business shall be carried on by my executors for the benefit of my said son Harry, and that my said husband shall be retained as the manager thereof at a salary of fifteen hundred dollars per annum. And I do hereby authorize and empower my executors to sell or make such other disposition of my real or personal estate as the safe conduct of such business shall seem to them to require."

The defendant alone qualified as executor and letters testamentary were issued to him. Under the will he continued the tailoring business which had before been carried on by his wife, and in that business became indebted to the plaintiffs, between July 15 and October 31, 1885, for merchandise purchased of them in the sum of $1,380.71. The defendant having neglected to pay such indebtedness, in March, 1886, the plaintiffs commenced this action against him as executor, and in their complaint they alleged the foregoing facts, and the further facts that the merchandise was necessary for the conduct of the business carried on by the defendant, and that the estate of Mrs. Sharp had the full benefits thereof; that the defendant, individually, is irresponsible, and that there is no way for the payment of plaintiffs' debt except out of the estate; that there are sufficient funds and property belonging to the estate and in the hands of the defendant executor for the payment thereof; and the complaint demanded judgment against the defendant as executor, and that the defendant, as executor, be required to pay the judgment out of the funds and property in his hands belonging to the estate, and prayed for such other and further relief as to the court might seem just and proper. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled and judgment was entered for the plaintiffs against the defendant, as executor, for the amount claimed, with interest and costs,

and he was required to pay the judgment out of the funds and property in his hands belonging to the estate of Mrs. Sharp. That judgment was affirmed in the General Term and in this court. (113 N. Y. 586.) After the affirmance of the judgment in the General Term the plaintiffs made a motion at Special Term for an order appointing a receiver to carry into effect the judgment and requiring the defendant to pay to the plaintiffs or to the receiver the amount thereof. That motion was defended, but the court granted it and made an order appointing a receiver of the estate of Mrs. Sharp, directing the defendant, as executor, to deliver the whole estate to him, and requiring the receiver to pay the plaintiffs' judgment and to hold the balance of the estate subject to the further order of the court.

The further material facts are stated in the opinion.

*Alexander V. Campbell* for appellant. The judgment, having been recovered after the testatrix's death, is classified in the distribution of assets as an open account, but the effect of the order appealed from would be to make it a preferred claim, which is contrary to law. (Redf. on Surr. Prac. [3d ed.] 553 ; *St. John's Estate,* 1 Tuck. 126 ; *Parker* v. *Gainer,* 17 Wend. 559.) The statute provides two ways, and only two, by which the assets of a decedent's estate may be reached before their final distribution. (Code of Civ. Pro. §§ 1825, 1826, 2717, 2718.) By adjudicating the fact and the amount of the estate's liability, the Supreme Court did what the Surrogate's Court could not do. (Redf. on Surr. Prac. 55 ; *Tucker* v. *Tucker,* 4 Abb. Ct. App. Dec. 428; *Bevan* v. *Cooper,* 72 N. Y. 317 ; *Thompson* v. *Taylor,* 71 id. 219 ; Preliminary Note to Throop's Code, art. 1, tit. 3, chap. 15.) A court of equity will refuse to enforce its own judgment when made aware that that judgment was obtained through fraud or mistake of fact. (21 Abb. N. C. 70–89.)

*Walter S. Logan* for respondent.

Earl, J. By the order appealed from the whole estate of the testatrix is taken out of the hands of the executor and

placed in the hands of a receiver, the executor is absolutely restrained from the performance of his duties, and the debt of this plaintiff is ordered to be paid in preference to all other debts of the testatrix.    We are unable to perceive any ground upon which such an order can be maintained.    There was no allegation in the complaint in this action that the estate of Mrs. Sharp was at her death solvent or insolvent, and no claim was there put forth that the plaintiffs were entitled to payment of their debt in preference to other creditors of the testatrix, and there is no determination as to the priority of payment by the judgment in the action.    All that is determined by the judgment is that the plaintiffs had a debt for the amount claimed and that that debt is to be paid out of the estate of Mrs. Sharp. By the general rules of law the executor became personally liable for plaintiffs' debt contracted by him after the death of the testatrix, and they could only resort to him for payment. But, because of his insolvency, they could, in equity, resort to the estate for the payment of their debt; and the sole effect of the judgment, aside from determining the amount of plaintiffs' claim, is to make it payable out of the estate.    The other creditors of the testatrix have had no hearing and no opportunity to be heard as to their claims upon the estate; and they should not without any hearing have their claims postponed until after the plaintiffs' claim had been paid in full. For the purpose of distribution of an estate among the creditors of a decedent the executor does not represent the creditors as to their respective claims upon the estate as between each other.    He represents the estate as to all claims made against it, but not as to the mode of its distribution among the various claimants thereon.    The statutes provide that such claimants are to be cited in the Surrogate's Court and there heard in reference to their respective claims upon any distribution of the estate.    Here, in opposition to this motion, it was shown that Mrs. Sharp at her death owed a large amount of debts and that her estate was, in fact, insolvent. Under such circumstances, the plaintiffs can proceed to collect their judgment only in the modes prescribed by law.    The

estate is to be settled and administered in the Surrogate's Court, and the judgment may there be presented upon the final settlement of the accounts of the executors, and ordered to be paid *pro rata* with other debts; or the plaintiffs may obtain payment of the same, or of its proper proportion, in the Surrogate's Court under sections 1825, 1826, 2717, 2718 of the Code.

How the surrogate shall adjust the various claims upon the estate in the hands of the executor need not now be finally determined. The estate of a decedent who leaves debts is, at his death, impounded by the law for all his creditors, and they must share therein if it is insufficient, *pro rata*, except as the statute in a few cases gives preferences. The creditors are not bound, without their consent, by any provisions contained in a will for the establishment or continuance of any business after the death of a testator; but they have the absolute right to have the estate applied, as soon as the forms of law will permit, upon their debts. So here, unless the creditors existing at the death of Mrs. Sharp in some way consented to the carrying on of the business by the executor, they have the right to insist that the estate, as it existed at her death, shall be used for the payment of their debts and the expenses of administration to the exclusion of debts subsequently created by the executor. (*Stanwood* v. *Owen*, 14 Gray, 195; *Pitkin* v. *Pitkin*, 7 Conn. 307.) But if the business was carried on by the executor, with the consent of the original creditors, then different principles must apply in the distribution of the estate among all the creditors. Then the creditors of the business must either share *pro rata* with the other creditors in the whole estate, or they must first be paid out of that portion of the estate used in the business; and we are inclined to think that the former is the correct rule. If the business was carried on without the consent of the creditors, and the estate has been thereby increased, then the original creditors should probably alone share in the estate as it came to the executor, and the creditors of the business should alone have the increase made by their contribution to

the capital of the business. As these questions have not been argued, we ought not now to determine them, as they are new in this state and not without some difficulty.

The orders of the Special and General Terms should be reversed and the motion should be denied, with $10 costs of the motion and the costs of the appeal to the General Term and to this court.

All concur, DANFORTH, J., in result.

Order reversed.