# Levi's Estate.

*Will—Executors and administrators—Carrying on business of decedent—Estoppel.*

1. Where a testator directs that his sons shall continue his business after the death of his wife, and one of his sons who was also the sole executor, carries on the business as executor, with the acquiescence of the widow and testator's children, who are legatees, and it appears that the widow receives her living expenses from the proceeds of the business, neither the widow nor the children can object to the payment of creditors whose claims are based upon transactions with the executor while continuing the business after the death of the testator.

*Decedents' estates—Claim of widow—Loan to husband—Evidence.*

2. The claim of a widow to recover the amount of a loan from her husband's estate will be sustained, where a son who was manager of the decedent's estate, testifies that the money was raised on a mortgage of his mother's separate property, that it went into the decedent's business, that after his father's death the mortgage was paid off out of money received from an insurance policy on the decedent's life in the widow's favor, and such testimony is not contradicted, but is corroborated by papers relating to the different transactions. In such a case the mere relationship of the parties is not sufficient in itself to discredit the son's testimony.

Argued Feb. 17, 1909. Appeals, Nos. 29 and 30, Jan. T., 1909, by David Levi, executor, from decree of O. C. Lycoming Co., June T., 1906, No. 35, dismissing exceptions to auditor's report in Estate of Michael Levi, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. No. 29 reversed. No. 30 affirmed.

Exceptions to report of John J. Reardon, Esq., auditor.

From the record it appeared that Michael Levi died on April 9, 1906, leaving a will by which he provided, inter alia, as follows:

" Item. It is my wish and I direct that after my death, or if my beloved wife, Hermine Levi, shall be living at that time, then after her decease, my sons, Morris C. and David L., shall continue the clothing business which I am now engaged in,

until all my living daughters are married, during which time, and for which purpose, my said sons shall have the use of the money, which I shall have in the bank to my credit at my decease, and during which time the profits of said business shall be disposed of as follows, to wit: "

He appointed his son David to be the sole executor of his will. David as executor carried on the business of the testator, and his mother and brothers and sisters acquiesced in this course, and the widow received her living expenses out of the proceeds of the business. At the audit various creditors presented claims based on transactions with the executor while conducting the business after the father's death. These claims were allowed by the auditor.

The testator's wife, Hermine Levi, claimed the sum of $6,000 which she claimed she had loaned to her husband during his lifetime. This claim was disallowed by the auditor. David Levi as executor and Hermine, the widow, filed exceptions to the auditor's report. All of the exceptions were dismissed, HART, P. J., filing the following opinion:

The findings and conclusions of the auditor as to the construction of the will of Michael Levi, deceased, relative to the duty of the executor to marshal the assets of the estate and pay the debts of the decedent contracted during his lifetime; the want of authority contained in the will to conduct the business of the decedent during the lifetime of the widow of the decedent; the ascertainment of the value of the personal estate of the decedent and the valuation placed thereon; the distribution to the creditors of the decedent, and the rejection of the claim of Hermine Levi, seem to us to be sustained by the evidence and warranted under the law.

The only part of the auditor's findings and conclusions about which we have doubt is that part relating to the distribution to the creditors whose claims against the estate were contracted for goods furnished in carrying on the clothing business, as formerly conducted by the decedent, by the executor, after his decease.

By the terms of the will, any surplus over and above the amount required to pay the debts of the decedent would be-

long to the widow of the decedent during the period of her natural life, with remainder to the children of the testator named.

A diversion of this fund, or balance left after the payment of debts, could only be justified on the ground that the widow and legatees in remainder had done some act or thing that would estop her and them from denying the right of such creditors to participate in the distribution of such balance, and make it inequitable and unjust to such creditors not to allow them to participate in this distribution.

The counsel for the accountant and for the widow of the decedent, in his written argument to the court, says: "The executor openly and notoriously proceeded to carry on the business of the decedent. To this the widow of Michael Levi made no objection, nor did any of her children or legatees, nor did any of his creditors." And again he says: "The widow, the children and legatees of the testator and all the creditors of the testator must either have interpreted the will of Michael Levi in the same way that his executor interpreted it, namely, as authorizing him to carry on the business, or assented to carrying on of this business as the best way of settling this estate."

It also appears that during the period of time these credits were given and debts contracted, the widow was receiving her living expenses from the proceeds of the business being carried on.

Now, this being the situation as disclosed and contended for by the widow's counsel, it would seem to us as though she cannot be heard now to deny to the creditor his claim, who was led to give credit on the belief that the business was being so conducted as to give him a lawful claim against the estate of the decedent.

Whilst this cannot affect the creditors whose claims are based on contract with the decedent in his lifetime, and whose rights to participate in this distribution and to be paid the full amount of his claim could only be waived by express agreement based upon a valid consideration, the widow and legatees stand in a different relation to the estate; and being

participants in the conducting of the business as carried on by the executor after the death of the testator, and admittedly assenting to the conducting of the same and in obtaining the credit on which these claims are based, it does not seem unjust or inequitable that their claim as widow and legatees should give way to that of creditors whose claims have been contracted on the faith of what they now and what they have always claimed to be the right of such creditor to look to the funds and property of the estate of the decedent for their pay.

This being so, the auditor's distribution to such creditors seems to us justifiable and equitable.

And now, January 5, 1909, the exceptions to the auditor's report are overruled and the report is confirmed absolutely.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Max L. Mitchell*, for appellants in Nos. 29 and 30.—If the executor, either under the terms of the will, or by the consent of all parties interested, had the right to carry on the business of Michael Levi, and if he did carry on this business in an ordinarily cautious and prudent manner, and in the same way that he would have conducted his own business affairs, acting in good faith throughout, and in the manner which he thought was for the best interests of the estate, this is all the law requires, and he cannot be surcharged because of a disastrous conclusion: Semple's Estate, 189 Pa. 385; Waddell's Estate, 196 Pa. 294; Stewart's Appeal, 110 Pa. 410.

Debts contracted by an executor in carrying on the business of his testator, but who is not authorized by the will to carry it on, are not claims against the estate, but merely individual liabilities of the man who acts as executor: First Nat. Bank's Appeal, 7 Atl. Repr. 207; Lucht v. Behrens, 28 Ohio, 231; D., L. & W. R. R. Co. v. Gilbert, 44 Hun, 201; Williams on Executors, 1900, 1901; Corr's Estate, 8 Pa. Dist. Rep. 209; Williamson's Appeal, 94 Pa. 231.

A wife claiming as a creditor against other creditors of the husband must prove her claim by evidence clear and satis-

factory to a degree beyond that required of other creditors and leave no doubt of its good faith and its truth in fact. This we think Mrs. Levi did. The books of the testator on which every item claimed by her as a credit appears as a charge against him, are an admission by the testator himself that he owed his wife this money.

*Herbert T. Ames*, with him *A. R. Jackson, Candor & Munson* and *Thos. H. Hammond*, for appellees.—It is necessary for a wife to prove her right as a creditor of her husband by distinct and clear proof that the transaction was a loan from her own separate estate; that the money passed over to him. The burden is upon her to establish this fact fully and clearly: Hause v. Gilger, 52 Pa. 412; Lahr's Appeal, 90 Pa. 507; Dalley's Assigned Estate, 200 Pa. 140.

OPINION BY MR. JUSTICE MESTREZAT, March 29, 1909:

We agree with the auditor and the court below in their construction of the will of Michael Levi, deceased, and are of opinion that David Levi, the executor, has no just cause of complaint against the decree entered by the court. We think there was ample evidence to sustain the auditor's findings of fact except as to part of Mrs. Levi's claim, and his report having been confirmed by the court we will not disturb it save in this one respect.

We do not agree with the auditor and court in the disallowance of Hermine Levi's claim of $6,000. We are aware that claims of this character must be sustained by a higher degree or quality of proof than is required of a stranger. She must establish her claim not simply by the weight of the evidence, but by proof that is clear and satisfactory. The opportunities for fraudulent collusion between husband and wife are so great, and the difficulty of defeating it by opposing proof imposes so great a burden that the protection of creditors in such cases requires a much higher standard of proof than in ordinary cases. As said in Earl v. Champion, 65 Pa. 191, 195: "The family relation is such and the probabilities of ownership so great on the part of the husband, that a plain and satis-

factory case should be made out before the wife can be permitted to hold property against honest creditors."

We think Mrs. Levi brought herself within the most stringent rule applicable in such cases, and sustained her claim of $6,000 by proof that was both clear and satisfactory. In fact, it is not clear how under the circumstances she could have proved her claim by a higher degree of proof, except the whole transaction had been in writing. Her claim was for money secured from Snellenburg on a mortgage of her real estate in Williamsport and loaned to her husband. David Levi, her son, testified that the money was raised on the mortgage of her separate property and that it went into her husband's business. He was the manager of his father's business and, therefore, had an opportunity to know the facts about which he testified. He further testified that the mortgage was paid by Mrs. Levi after her husband's death out of money which she received from a life insurance policy carried by Levi in her favor. The testimony of David Levi was not impeached by any witness, nor by any fact except his relationship to the interested parties. His testimony was corroborated by the production of the bond and mortgage, a letter of Snellenburg acknowledging the receipt of the money from Mrs. Levi, and the record satisfaction of the mortgage after Levi's death. There was nothing, save the relationship of the parties, to discredit any part of this testimony. Every opportunity was given the appellees to cross-examine David Levi and to produce testimony to defeat the claim of Mrs. Levi and to discredit the proof introduced in its support. The mortgage records of Lycoming county, the life insurance company and the testimony of Snellenburg were all available to the appellees as evidence if they desired to impeach the claimant's testimony. If David Levi was testifying falsely as to the insurance policy and the money received on it, or as to the mortgage transaction, the sources of information were open to the appellees by which they could have easily discovered the fact. It was quite natural for David Levi to act for his mother in all these transactions, and the fact is not in itself sufficient to discredit his testimony, especially as he gave the data which en-

abled the appellees to verify the truth or falsity of his testimony. He gave a detailed statement as to the loan by Snellenburg, how it was secured and how it was paid in addition to the written evidence sustaining the claim. Mrs. Levi cannot testify, her lips are sealed, and the testimony in the case shows that David Levi knew for whom and for what purpose the money was borrowed from Snellenburg. Acting as the agent of his mother, he also knew about the life policy, the receipt of the money on it, and the payment of the Snellenburg mortgage. As we have said the evidence in support of Mrs. Levi's claim is not contradicted by either parol or record evidence. It shows the loan to Levi, and it also shows that the source from which Mrs. Levi obtained the money to make the loan was not her husband or her husband's estate. It is not material whether she owned the real estate upon which the mortgage was placed in view of the fact that the mortgage was satisfied out of Mrs. Levi's own funds, the money she received on the life policy of her husband. The two material questions in the case are whether there was a loan by Mrs. Levi to her husband, and whether the loan was made by her from money other than that received from her husband. The uncontradicted evidence in the case answers both questions in the affirmative.

The appeal of David Levi, executor, at No. 30, January Term, 1909, is dismissed and the decree as to him is affirmed. In the appeal of Hermine Levi at No. 29, January Term, 1909, the second assignment of error is sustained as to the claim of $6,000, which is directed to be allowed, and with this modification, the decree is affirmed.