In the Matter of the Estate of George A. Seigrist, Deceased.

Surrogate's Court, Oneida County, January 20, 1933.

*Merrill & Quinn* [*August Merrill* of counsel], for the executrix.
*James & Leo O. Coupe* [*Leo O. Coupe* of counsel], for the contestant.
*Pratt & Fowler* for the contestant.

EVANS, S.   The administration of this estate illustrates the folly of a testator naming in his will his wife as executrix and thus imposing upon an inexperienced woman the burden of winding up his complicated and tangled business affairs.   The testator was for many years the owner of a retail drug business located on South Street, Utica, N. Y.   One local corporation is engaged in the wholesale drug business and is a creditor of this estate to the extent of about $1,700.   Another local creditor has a claim amounting to $41.25.   They filed objections to the account and produced evidence to challenge its accuracy.   The testator died on March 25, 1930. He was survived by his widow, Elizabeth, and a daughter, Sarah, to whom he willed his property in equal portions.   Mrs. Seigrist was named as executrix in the will, which was probated on April 7, 1930.   It contained no authority for the executrix to continue the business.   The testator was for three months preceding his death confined in a local hospital.   During his illness a fire occurred in his store and the loss was adjusted with insurance companies at $3,802.56.   The drafts from various insurance companies were issued and delivered to the testator.

During the illness of the testator in the months of January and February, 1930, three judgments totalling $856.08 were recovered against him.   After the fire a levy was made on the stock in the store and an order procured restraining the payment of the fire insurance loss.   The judgments were satisfied of record the next day (April 8, 1930), after the probate of the will.

The executrix operated the business.   Merchandise was bought and sold.   No inventory was taken until December 18, 1930. This shows assets valued at $9,424.82.   An auction sale was held on March 5, 1931, at which the stock and fixtures sold for $775. Book accounts brought $50.   Notice of the auction sale was published in local newspapers.

The petition for probate states that the estimated value of the estate at the time of filing was $12,000.   The liability of a representative of an estate is set forth as follows: " No profit shall be made by an executor, administrator, guardian or testamentary trustee by the increase, nor shall he sustain any loss by the decrease or loss, without his fault, of any part of the estate or fund; but he shall account for such increase and be allowed for such decrease or loss on the settlement of his accounts."   (Surr. Ct. Act, § 265.)

It is the contention of creditors that the executrix without legal

authority continued the business at a constant loss until the assets were nearly all frittered away. The executrix claims that she hoped to sell the business as a going concern and in that event would realize much more than by a hasty sale of the stock and fixtures. There was one prospect that excited expectations of a sale for $10,000, but it was not consummated. There is evidence that the testator desired to have the business continue after his death and that he made declarations to that effect.

In any event the law is clear that, the will being silent on the subject, under the circumstances the executrix lacked authority to continue the business. (*Willis* v. *Sharp*, 115 N. Y. 396; *Columbus Watch Co.* v. *Hodenpyl*, 135 id. 430; *Manhattan Oil Co.* v. *Gill*, 118 App. Div. 17.)

The executrix was not familiar with business and apparently the operation and management of the store were under the direction of the daughter, Sarah, who had some years experience there. It should be noted here that the sheriff was in possession at the time of testator's death. This fact, in itself, was a clear warning to these local creditors that vigilance and alertness must be exercised if the debts were to be paid. An old maxim has its application here: " Equity aids the diligent and not those who sleep on their rights." This executrix should not have been allowed to continue a business for nearly a year. Removal or at least a restraining order would have been a proper remedy.

The estimate in the petition and the figures of the inventory, I think, are both gross exaggerations as to value. The small amount realized on the sale indicates this. Fixtures alone that had remained intact are inventoried at $2,730.40. There is apparently no valid objection to the sale except that it was nearly a year late.

" An executor or administrator may sell the personal property of the deceased at any time for the payment of debts or legacies, or for making distribution. The sale may be public or private, and may be on credit not exceeding one year, with approved security." (Surr. Ct. Act, § 214.)

The insurance money appears never to have been paid to the executrix. This transaction took place during the lifetime of the testator. About $900 was paid to the sheriff to satisfy the judgments mentioned and unpaid bills for insurance premiums amounting to $484.11 were paid. The balance was turned over by the testator to his daughter, Sarah. Bank records confirm this assertion. There is no legal basis on which the account can be surcharged for failing to list insurance money as it never passed to the estate.

The executrix has failed to produce the account books kept in the store. These books were in charge of the daughter, Sarah, and according to her testimony the combined effect of the fire and the

auction was to destroy and lose the books. In any event there is no concrete proof of the fair value of the assets of the estate at the time of the death of the testator. This situation is chargeable to the executrix and the rights of creditors should not be prejudiced by this omission.

The unpaid claims as listed in Schedule D of the account amount to $9,023.27. With the exception of the two claims under consideration, these debts appear to have been incurred subsequent to the death of the testator. Such claims are not valid against the estate but are personal obligations of the executrix. (*Willis* v. *Sharp*, 115 N. Y. 396.)

Debts of the testator due or to become due at the time of his death are allowed and all other obligations, exclusive of funeral and administration expenses, are disallowed

I think there is evidence to support a finding that the fair value of stock and fixtures at the time of death of the testator was sufficient to pay creditors, and the account is surcharged as to the claims of The A. H. Williams Company, Inc., Clark-Davis Coal Company and any other valid claim or claims against the estate as above stated.

The interest of creditors in the estate being limited to the amount of their several claims, and the account having been surcharged accordingly, discussion of other objections raised is unnecessary.

Another feature of this proceeding not at this time directly before the court, but discussed in the brief of a creditor, may as well receive attention now. It seems to be conceded by all interested parties that the executrix has no property either as executrix or personally. She has so testified in this court. Her inability to comply with the terms of a decree directing payment to creditors is established to the satisfaction of the court. This being the unfortunate situation, it is urged that the executrix be punished for contempt. There is no evidence that the executrix appropriated for her own use any property of the estate. Her delinquency consists in loss to creditors by reason of her effort to continue a business that was headed for bankruptcy when she was appointed executrix.

" Where an offender imprisoned as prescribed in this article, is unable to endure the imprisonment, or to pay the sum, or perform the act or duty, required to be paid or performed, in order to entitle him to be released, the court, judge or referee, * * * may, in its or his discretion and upon such terms as justice requires, make an order, directing him to be discharged from the imprisonment." (Judiciary Law, § 775.)

" An executor who has been imprisoned for contempt in failing

to pay over money pursuant to a final decree entered on his accounting, may be released from custody under section 775 of the Judiciary Law, where it appears that he is in a serious physical condition, and is unable to pay the fine imposed." (*Matter of Scheuer*, 161 App. Div. 528.)

The case at bar involves the rights of a woman. There is serious doubt whether the executrix is subject to imprisonment.

" An execution cannot be issued against the person of a woman unless an order of arrest has been granted and executed in the action, and, if it was executed against the judgment debtor has not been vacated." (Civ. Prac. Act, § 765.)

An order of arrest as applied to a woman is governed by the following provisions: " A woman cannot be arrested, as prescribed in this and the next article, except in a case where an order can be granted only by the court or where it appears that the action is to recover damages for a willful injury to person, character or property." (Civ. Prac. Act, § 829.)

While the sections quoted primarily apply to actions and proceedings in other courts, I think they must also be read in connection with a Surrogate's Court, as provided by the following: " Except where a contrary intent is expressed in, or plainly implied from the context of this act, a provision of law or of rules, applicable to practice or procedure in the Supreme Court, applies to Surrogates' Courts and to the proceedings therein, so far as they can be applied to the substance and subject matter of a proceeding without regard to its form." (Surr. Ct. Act, § 316.)

Decreed accordingly. ▮▮▮▮▮▮