ESTATE OF ONSTAD : NELSON, Appellant, vs. ONSTAD, Executrix, Respondent.

*December 7, 1936—April 7, 1937.*

334

For the appellant there was a brief by *Curkeet & Van Wolkenten* of Madison, and oral argument by *William R. Curkeet*.

For the respondent there was a brief by *Bull, Biart & Bieberstein* of Madison, and oral argument by *Benjamin H. Bull*.

The following opinion was filed February 9, 1937:

FOWLER, J. The appellant appeals, (1) from the allowance of·his claim at less than the amount he claims; (2) from the allowance of items of the final account of the executrix to which he filed objections; and (3) from the denial of a motion for an order of the court directing the executrix to pay his claim. The three branches of the case will be treated separately.

(1) The appellant filed a claim against the estate of P. C. Onstad for the amount of a promissory note with interest and attorney fees for collection according to its terms. The note was for $800. The payee was the Bank of Wisconsin. Appellant was an accommodation maker of the note for Onstad. The note was dated July 30, 1929, was due in ninety days, bore interest at seven per cent until maturity, and after maturity until paid at the highest rate permissible by law, and obligated the maker to pay an attorney fee of ten per cent incurred in collection.

Onstad died August 24, 1929. The bank demanded payment from appellant. The appellant paid to the bank $814. There was no indorsement or written assignment of the note by the bank to the appellant, and the county court found that the appellant did not purchase the note, but merely paid it. The appellant claims to be the owner of the note by reason of his payment and to be entitled by subrogation, under the law of suretyship, to all the rights of the bank, and therefore to be entitled to recover the full amount of the note according

to its terms, as the bank might have done had he not paid it. The court allowed the claim at the amount paid and interest from the time of payment.

The appellant, though a maker of the note, was an accommodation maker and was a surety for Onstad. As surety he is entitled by subrogation to whatever security the bank had for the enforcement of its claim against Onstad. Arrant, Suretyship, p. 364; Stearns, Suretyship, p. 449; *Clifford v. West Hartford Creamery Co.* 103 Vt. 229, 153 Atl. 205; 79 University of Pennsylvania Law Review, 976; *Fox v. Kroeger,* 119 Tex. 511, 35 S. W. (2d) 679. The Negotiable Instruments Law, sec. 116.01, Stats., which declares a person absolutely liable to pay the instrument "primarily" liable, does not change the law of suretyship. 10 Texas Law Review, 519; *Windhorst v. Bergendahl,* 21 S. D. 218, 111 N. W. 544; *O'Neal v. Stuart* (C. C. A.), 281 Fed. 715; *Wakonda State Bank v. Fairfield,* 53 S. D. 268, 220 N. W. 515; *Clifford v. West Hartford Creamery Co., supra; State Bank of La Crosse v. Michel,* 152 Wis. 88, 139 N. W. 748, 139 N. W. 1131; *Mueller v. Jagerson Fuel Co.* 203 Wis. 453, 233 N. W. 633.

The above rule as stated does not afford the appellant any rights by subrogation, as the bank had no security to enforce against Onstad. The appellant claims that the rule gives him the right to recover the full amount of the note, because the bank might have so recovered had it filed the note against the estate. The rule does not reach so far. This is made clear by consideration of the decisions of this court relied on by appellant. These cases are *German American Savings Bank v. Fritz,* 68 Wis. 390, 397, 32 N. W. 123, and *Mason v. Pierron,* 63 Wis. 239, 23 N. W. 119. In the former, Blankenburg and Fritz signed a note as surety for Servatius. The payee of the note in a suit upon it recovered judgment against all three. The judgment was a lien on land of Fritz. Servatius was insolvent. Blankenburg was compelled to pay

the payee the full amount of the judgment, and the bank assigned the judgment to him. Blankenburg sought contribution against Fritz, and by subrogation claimed the right of the lien of the judgment against the land of Fritz. This lien was a *security* which the bank acquired on rendition of the judgment, and the court held that Blankenburg was entitled by subrogation to a lien on the land for one half the amount of the judgment paid by Blankenburg. The latter case was of the same nature. Judgment was procured against Pierron as principal and others as sureties on his bond. One of the judgment debtors was Lallier, and the judgment was a lien on his land. Some of the judgment debtors paid the judgment and assigned to one of them so paying their claim against Lallier for contribution. The judgment lien against Lallier's land was a security to the judgment creditor for the enforcement of its judgment when Lallier's codefendants paid the judgment. The plaintiff in a suit for contribution against Lallier was held entitled by subrogation to the lien of the judgment against his land. The security that the sureties who paid the judgments in these cases obtained by subrogation was a lien against the land for the landowner's proportional liability to contribution. The extent of his liability was to pay his proportional share of the amount paid by his cosurety upon the judgment. To make this rule applicable to the instant case let us assume that another had signed Onstad's note with appellant as surety, and appellant was seeking to hold the other signer in a suit for contribution. In that situation equity would award contribution for one half the amount paid by the appellant with interest thereon at the legal rate from the time of the payment, not for one half the amount of the note. It is true that there are cases holding that an accommodation maker paying a note is entitled to recover on the note itself. However, the weight of authority and in our opinion of reason clearly is that the surety paying recovers, not upon the note itself, but on the implied promise

to indemnify. According to notes in 36 A. L. R. 575, and 77 A. L. R. 672, such is the rule. Cases to this effect are there cited by courts of the United States, fifteen of the states and England. We consider that the county court was correct in limiting appellant's recovery to the amount paid by him with interest.

(2) (a) The final judgment approving the account of the executrix showed a balance on hand for distribution of $434.47. This was only sufficient to pay creditors seven per cent of their claims. The account as approved contained the following items of credit to the allowance of which and others the appellant objected: Loss by depreciation through operation of business of decedent by executrix, $7,953.29; loss by depreciation of fixtures, $811.50; loss on sale of stock of goods below inventory, $2,148.93; loss on accounts, $1,314.86.

The claim of the appellant that the credits objected to should have been disallowed entirely or in great part rests upon the fact that the decedent at his death was operating a general store in the village of Cambridge, and the executrix continued to operate the business from his death in August, 1929, to April, 1932.

The executrix did not obtain any order of court authorizing her as executrix to conduct the business, and did not obtain any order of court extending the time for closing the estate beyond sixty days after the expiration of the time for adjusting claims as required by sec. 313.13, Stats. 1929, as a condition of which extension it must satisfactorily appear to the court that some specified or other "good and sufficient cause for delay" existed. If a cause for delay did exist, the court might extend the time for settlement of an estate one year, but no longer extension might be authorized except upon petition and notice by publication. Sec. 313.14, Stats. 1929. No such petition was filed and no notice published. The trial court found that under these statutes, in absence of

an order for extension, the time for settling the estate expired December 21, 1930, and we will assume this to be correct. No account of any sort was filed by the executrix until August 13, 1932, over two and a half years after her appointment as executrix, and three years after the death of decedent, although the statute first above cited required the filing of her account within sixty days from the time fixed for adjusting claims.

The executrix claims authority for continuation of the business of the decedent under the will of decedent which contained the following clauses: "First: I will and direct that all my just debts and funeral expenses be paid as soon as may be after my decease." Second: A clause giving his estate to his wife during her life or widowhood and thereafter to the testator's children. "Third: It is my desire that my wife, Jennie, use her discretion as to continuing to conduct . . . for the benefit of my estate" the general merchandise business conducted by the decedent. Fifth: A clause naming his wife as the executrix of his estate.

The executrix, who was "the wife Jennie" named in the will, also claims authority to continue the business under an order of the county court appointing her as "special administratrix." She was appointed special administratrix September 5, 1929. On October 23, 1929, an order was entered authorizing her to continue the business as special administratrix and to pay as an expense thereof to herself $75 per month, to her son $100 per month, and to a woman clerk $60 per month. The letters as executrix issued provided that the inventory filed as special administratrix be accepted as the inventory as executrix, but directed the filing of an inventory of the stock of goods received by her as executrix from herself as special administratrix. No inventory of the goods so received was ever filed.

(b) No cases involving contests where an executor carries on the business of his testator appear to have been before this

court. In *Estate of Mohr,* 212 Wis. 198, 248 N. W. 143, 249 N. W. 517, the testator's business was carried on by the executor pursuant to the order of the county court and with the consent of all legatees and devisees. It does not appear whether the creditors consented or not, and it does not appear whether the will so directed or not. No question was raised as to the right of the executor to carry on the testator's business, and the rights and liabilities connected with his so doing were not considered. An administrator who does so, or an executor who does so, in absence of authority therefor in the will, especially in absence of an order of the court so directing, probably does so at his peril. 2 Woerner, American Law of Administration (3d ed.), p. 1047. "But a testator may provide in his will for the establishment or continuation of a business." Where an executor does so in good faith, in compliance with the will, and acts prudently, losses are chargeable against the estate. 2 Woerner, p. 1049. How the original assets should be distributed between creditors of the testator and those of the executor is perhaps not clear. The question is considered briefly in *Willis v. Sharp,* 115 N. Y. 396, 22 N. E. 149. It is there held that a claim for goods sold to an executor conducting a business must be collected through a judgment procured in the probate court. The opinion indicates that in such case the will does not bind the creditors of the testator, but they are entitled to have the assets of the estate existing at the time of the death devoted to satisfaction of their claims, and that, if the creditors consent to the continuation of the business, they and the persons subsequently selling goods to the executor must share *pro rata* in the whole estate, instead of the subsequent creditors being paid in full.

The rule of *Willis v. Sharp, supra,* that creditors of a testator are not bound by the provisions of his will for continuance of his business, follows from the statutory provisions that a decedent's estate less exemptions, preferred claims,

widow's allowance during settlement, etc., must be devoted so far as necessary to the payment of the testator's debts. Secs. 313.15, 313.26, Stats. This is also implied from the conditions of the statutory bond of an executor, that he will "pay and discharge all debts" out of the personal property of the estate. Sec. 310.14, Stats.

Many cases are cited in a note in 40 L. R. A. (N. S.) 212, to the point that an executor who proceeds under the terms of the will, will be protected if he acts prudently. However, if losses are sustained through his fault, negligence, or imprudence, he is liable for the losses. *Burgess v. Green,* 7 Bush (Ky.), 263; *Luers v. Brunjes,* 5 Redf. (N. Y.) 32; *Re Rumsey's Will,* 63 Hun, 635, 18 N. Y. Supp. 402, 45 N. Y. State Reporter, 458.

(c) The county court found in effect that the executrix acted with ordinary prudence in continuing to conduct the business of the estate. To us it seems that this conclusion of fact is contrary to the admitted facts of the case, notwithstanding that she may be held free from imputation of wilful violation of her duties. She knew that the business was being conducted at a loss and that there was a decided decrease in business after the testator's death before she was appointed executrix. Prior to the testator's death, the business was only paying expenses. She failed to inform the court of these facts. She assumed she had the right to continue the business under the terms of the will, regardless of the rights of creditors. Notwithstanding that the creditors of the testator were entitled to have the assets of the estate devoted to payment of their claims, she kept no account of the proceeds of the goods constituting a part of those assets. She did not know at the time of the trial whether any of the original stock of goods was on hand when she quit conducting the business. Her personal interests manifestly conflicted with her duties as executrix, in that she kept drawing from the business $75 each month until she drew a total of $2,324 as

salary, in addition to an allowance of $50 a month for a year as widow's allowance. What the amount of the debts of the testator was, or whether any of these debts other than appellant's were filed and allowed as claims against the estate, does not appear. It does not appear whether the "balance of unpaid claims" of $6,206.74 recited in the amended final account represented debts of the testator or debts incurred by the executrix in conducting the business. It appears that goods were purchased by the executrix to the amount of $52,000. These for the most part were paid for by her, as the amount of the final debts was $7,500. Whether the trade debts of the testator were paid by the executrix does not affirmatively appear, but presumably they were, to some extent at least, as she continued to deal as the testator had done with those from whom he purchased goods. It does not appear that claims for goods purchased by the executrix were presented to and allowed by the court as *Willis v. Sharp, supra,* indicates they should be. The original inventory of $9,206.45 in merchandise had fallen to $3,348.93 by April, 1932, and the latter inventory was apparently made on the same basis as the former. The fixtures by the same inventories had depreciated from $1,221.50 to $900. The fixtures were sold shortly after the latter inventory was taken for $300 and the merchandise for $1,200. Thus, during the time the executrix was conducting the business, out of two items of personal property aggregating $10,427.95 originally applicable to payment of debts only $1,500 was finally realized. Conceding that the original inventory was too high as based on cost, and that a business depression existed from 1930 to 1932, we cannot attribute to these two facts alone as did the trial court, a depreciation of $8,927 in these two tangible personal assets of the estate, themselves more than sufficient to pay all the debts of the estate even as they existed at the time of the filing of the final account, nor can we attribute to these two facts the loss in conducting the business

listed in the final account at $7,953.29 to which should be added $1,756.41 for "current bills paid" not included in the factor of operating expenses involved in computing such loss.

(d) Even upon the trial court's written decision it should not have approved the account of the executrix as filed. The court found that the executrix was negligent in failing to settle the estate within a year, in absence of an order of court for extension for cause shown. This alone, in the view of the trial court, subjected her to liability for all losses that occurred as a result of the delay. The trial court cites *Shupe v. Jenks,* 195 Wis. 334, 218 N. W. 375, *Coolidge v. Rueth,* 209 Wis. 458, 245 N. W. 186, and *Will of Robinson,* 218 Wis. 596, 261 N. W. 725, to this point and these decisions support his view. The court then finds that it does not appear that any loss occurred by reason of the delay. With this we cannot agree. A year and four months expired after the time the court found the estate should regularly have been settled before the executrix stopped conducting the business. The business was continually losing. The loss would manifestly have been less had the estate been promptly settled. The loss of $7,953.35 in conducting the business, or the depreciation of $8,927.95 appearing from the two inventories of October 23, 1929, and April 11, 1932, in the two items of merchandise and fixtures, manifestly did not all occur before December, 1930, when the court found the estate should have been settled.

(e) The county court in exonerating the executrix from the results of her delay in settling the estate seems to have relied on an addition by amendment to sec. 317.04, Stats., enacted in June, 1933, by ch. 335, Laws of 1933, relating to waste by an executor through "delay to raise money by collecting the debts or selling the real or personal estate of the deceased . . . and the value of the estate shall thereby be lessened" and charging the executor with resulting damages

to his account. The provision relied on begins with the clause: "But no such liability shall arise or accrue if one or more of the causes for delay mentioned in sec. 313.13, Stats., exists," etc. The language quoted manifestly limits the application of the statute to liabilities that "shall arise or accrue" after the enactment of the amendment, not to liabilities that accrued prior to its enactment. Other reasons might be given for the nonapplicability of the provision to the instant case, but this is enough.

(f) It thus appears that the judgment on the accounting must be reversed unless the appellant is estopped from objecting to the conduct of business by the executrix by giving consent thereto. It is doubtless true that, when one interested in an estate, whether as heir, legatee, or creditor, expressly consents to the continuing of business by an executor, he will not be heard to object to the continuance because of losses incurred through prudent management. Note in 40 L. R. A. (N. S.) 234, and cases cited; 2 Woerner, p. 1051. "But the onus lies upon the accountant [executrix] in such case to show such consent upon a full understanding of all the circumstances." 2 Woerner, p. 1051. The appellant did not expressly consent to the continuance of the business or to the failure of the executrix to close the estate within a year. He did know of these facts, and consent may be implied from conduct. *French v. Davis,* 38 Miss. 167; *Billingslea v. Young,* 33 Miss. 95; *Levi's Estate,* 224 Pa. 233, 73 Atl. 334; *Myrick's Succession,* 38 La. Ann. 611; *Garrett v. Noble,* 6 Sim. 504, 3 L. J. Ch. N. S. 159; 40 L. R. A. (N. S.) 235. But an executor relying on consent must show that the consent was procured (or given) upon full and fair representation and information communicated by him as to all the facts and circumstances connected with the risk. *Ward v. Tinkham,* 65 Mich. 695, 32 N. W. 901. It is without dispute that the appellant inquired of the attorney for the executrix many times when his claim would be paid, and was

always assured that it would be paid in full. It does not appear that the appellant was informed that the business was being conducted at a loss or that the original assets were not being kept separate for devotion to the claims of the testator's creditors. He was not informed of the true state of affairs until the executrix filed her final account, when he promptly interposed his objections. He was told of a proposed effort to procure the trade creditors to compromise their claims for thirty-five per cent, and of proposed collection of accounts to procure funds with which to pay his claim. We are of opinion that these facts are not sufficient to show consent on the part of appellant to the breach of duty of the executrix to conduct the business prudently or to her continuance of the business for a year and four months after the court found the estate should have been settled. It does not appear that the appellant knew that there was no order of court extending the time for settlement of the estate.

It follows that the portion of the judgment approving the final account of the executrix must be reversed, and that, but for (3) and (4) below, a proper accounting would be necessary, if it were possible to procure a proper accounting on retrial.

(3) It appears from the recitals of the judgment appealed from that the appellant moved the court that the "executrix be ordered to pay his said claim in full." The judgment also recites that this motion was denied. There is an appeal from the portion of the order denying this motion.

We are of opinion that this motion upon the whole record should have been granted. It appears from statements of the executrix and her counsel made upon the trial, that all creditors except the appellant had, prior to the hearing, accepted seven per cent of their claims and released the estate from liability. No creditor but appellant would have any interest in the funds that would be found due the estate on a proper accounting. It appears clear that the loss sustained by reason

of the imprudent continuation of the business by the executrix and the conduct of the business by her after the time when under the statute the estate, in absence of an extension for cause by the court, should have been closed, exceeded the amount of appellant's claim. To fail to keep a separate account of the avails of the merchandise on hand at the testator's death and hold them for application to the payment of the debts then existing, but instead to apply them, as they manifestly were applied, to the payment of merchandise thereafter purchased, was a clear breach of duty by the executrix, and of itself manifestly resulted in a loss of funds to the testator's creditors far in excess of the amount of appellant's judgment, after making every reasonable allowance for an excessive appraisal of those goods.

(4) For the reasons next above stated, irrespective of the statements of the executrix and her counsel upon the trial and of the appellant's motion for direction to pay his judgment, the reversal of the judgment as to the accounting requires that the record should be remanded, with directions to pay the judgment on his claim, for no one but appellant, Nelson, has appealed from the approval of the account. A party interested who does not appeal from a judgment is not entitled to any relief. *Van Matre v. Swank,* 147 Wis. 93, 131 N. W. 982, 132 N. W. 904; *Lezala v. Jazek,* 170 Wis. 532, 175 N. W. 87, 176 N. W. 238; *Wanta v. Perszyk,* 207 Wis. 282, 240 N. W. 183, 241 N. W. 377.

*By the Court.*—The judgment of the county court as to the amount of appellant's claim is affirmed; the portion of the judgment approving the account of the executrix is reversed, and the record is remanded with directions to enter an order requiring the executrix to pay the judgment upon appellant's claim.

A motion for a rehearing was denied, with $25 costs, on April 7, 1937.