VAN MATRE and others, Respondents, vs. SWANK and others,
imp., Appellants.

*May 2—October 24, 1911.*

*Homesteads: Descent to widow: Statutes construed: Adverse posses-
sion by life tenant: Establishing title: Appeal: Relief to appel-
lants only: Reversal without prejudice to others: Opening de-
fault.*

1. Ch. 137, Laws of 1858, was an exemption statute merely, not a
   special statute of descent dealing with homesteads; and under
   the general statute of descent in force in 1861 (ch. 92, R. S.
   1858), where a man died intestate, seized of any lands, leaving
   a widow but no issue, his estate, including his homestead, de-
   scended to his widow during her natural lifetime, not during
   widowhood only. *Ferguson v. Mason*, 60 Wis. 377, followed.
2. Although in such a case, upon settlement of the estate of the
   intestate, the county court assigned the homestead to the
   widow in fee, and she was thereafter in possession for more
   than ten years, she did not thereby acquire ownership by ad-
   verse possession under color of title, as against persons upon
   whom such judgment was not binding, where she never based
   any claim of title thereon, and especially where such judgment
   was wholly vacated within a short time after its entry.
3. Where a widow took a life estate in a homestead and rightfully
   continued in possession for more than twenty years and until
   her death, such possession cannot be held to have been ad-
   verse to the remaindermen so as to defeat their title, unless
   notice, actual or constructive, of the adverse character of her
   occupancy, or of facts sufficient to put a prudent man on in-
   quiry, was brought home to such remaindermen.
4. In an action under sec. 3186m, Stats. (Laws of 1909, ch. 492), to
   establish title to land based on adverse possession, where a
   part only of the defendants appeared in the action and ap-
   pealed from a judgment in favor of the plaintiffs, the supreme
   court, upon holding the judgment erroneous, can grant relief
   only to those so appealing therefrom; but the mandate, re-
   versing the judgment as to the appellants and directing judg-
   ment in their favor, is made without prejudice to any right
   which other defendants may have to proceed under sec. 2833,
   Stats. (1898), to have their default excused and to be allowed
   to defend.

APPEAL from a judgment of the circuit court for La Fayette
county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

One Elijah Swank in his lifetime owned the forty-acre tract in controversy in this action. He died intestate in 1861, leaving a widow and several brothers and sisters, but no children. The land involved was used and occupied as a homestead during the life of Swank, and his widow occupied it as a homestead until her remarriage in 1863 to one Dobbs, and thereafter she and her second husband continued to occupy it as their home until his death in 1897, and thereafter she continued to occupy it until her death in 1907. She left no will. There were no children born of the second marriage, but Mrs. Dobbs had several brothers and sisters. The plaintiffs in this action are her lawful heirs. The defendants in the action are the lawful heirs of Elijah Swank and of George W. Dobbs, the second husband of Swank's widow. This action was brought by the heirs of Mrs. Dobbs to establish title under ch. 492, Laws of 1909 (sec. 3186m, Stats.). Judgment was rendered in favor of the plaintiffs, adjudging them to be the owners of the farm. The heirs of George W. Dobbs did not appear or answer and did not disclaim title. A part only of the heirs of Elijah Swank appeared and answered. This appeal is prosecuted by those heirs at law of Elijah Swank who have appeared and answered in the action.

For the appellants there was a brief by *Carey & McDaniel,* and oral argument by *J. K. Carey* and *C. F. McDaniel.*

For the respondents there was a brief by *Orton & Osborn,* and oral argument by *P. A. Orton.*

The following opinion was filed June 1, 1911:

BARNES, J.   If the widow of Elijah Swank took an estate in fee in the homestead on the death of her first husband, then it follows that her heirs are entitled to the land in suit. If, as the trial court held, the widow took only a homestead right in the premises during widowhood, we think the same result would follow. In that event Mrs. Dobbs, formerly Swank, occupied the land continuously for forty-four years after her

second marriage, adversely to the heirs at law of her first husband. It is true that during thirty-four years of this time the land was also occupied by her second husband, but it does not matter whether one or both of these acquired title by adverse possession, if the heirs of Elijah Swank lost it, because the heirs of Dobbs are not complaining of the judgment. The appellants contend that Swank's widow took a life estate in the homestead which was not affected by her second marriage and that she was rightfully in possession of the premises until her death, and that such possession was not hostile to and did not affect the rights of the remaindermen. The material question in the case, therefore, is: What interest did Mrs. Dobbs take in the homestead of her husband, Swank?

The general statute of descent in force at the time of the death of Swank was ch. 92, R. S. 1858. Subd. 2 of sec. 1 of this chapter provided that, where a man died intestate seized of any lands, leaving a widow, "If he shall leave no issue, his estate shall descend to his widow during her natural lifetime, and after her decease to his father," etc. If this statute determines the rights of the widow, then it is apparent that she took a life estate in the land in question.

Ch. 137, Laws of 1858, was also in force when Swank died. It was entitled "An act relating to the exemption of homesteads from forced sale on executions or other final process." This act was incorporated in ch. 134, R. S. 1858, which was entitled "Of executions and proceedings supplementary thereto." Sec. 2 of the law provided: "On the death of the owner of such homestead the same shall descend to his widow [the deceased husband's], and she shall take and hold the same during her widowhood, freed from the incumbrance of all judgments and claims against the deceased or his estate, except mortgages lawfully executed thereon." [R. S. 1858, p. 798.]

This particular act has never been construed by this court, and it might be susceptible of any of three constructions: (1) that the widow took an estate in fee simple in the home-

stead; (2) that she took an estate therein during widowhood only; and (3) that it was an exemption statute pure and simple and did not confer any estate upon the widow whatever. The trial court was of the opinion that it gave a homestead right during widowhood only, and in effect that it was a special statute of descent dealing with homesteads.

The law of 1858 was rewritten and amended by ch. 270, Laws of 1864. This act was entitled "An act relating to homesteads." Sec. 2 of this law provided as follows:

"In case the owner of any homestead shall die intestate, leaving a widow and no children, such homestead shall descend to his widow; and in case such owner die intestate, leaving a widow and children, such homestead shall descend to his widow during her widowhood, and in case of her marriage or death, the same shall descend to his legal heirs; and in case such owner die intestate, leaving any child or children, or lineal descendants, but no widow, such homestead shall descend to his legal heirs; and in all cases mentioned in this section, such homestead shall descend freed from the incumbrances of all judgments and claims against the intestate or his estate, except mortgages lawfully executed thereon."

It is perfectly obvious that if this statute is not a statute of descent, then ch. 137, Laws of 1858, is not such a statute. It is just as obvious that, if the law of 1864 is an exemption law only, then the law of 1858 is an exemption law. The title to the law of 1858 is much more suggestive of an exemption statute than is that of the law of 1864; so is the language used. However, the law of 1864 has been construed and held to be a statute of exemption and not one of descent. This court has said that it only protects the interest which the widow received under the general statute of descent from seizure or sale on execution for the debts of the husband, except lawfully executed mortgages. The following quotation from *Ferguson v. Mason,* 60 Wis. 377, 388, 19 N. W. 420, is decisive of the question, if that decision is to be followed:

. "True, the statute (ch. 270, Laws of 1864) provides that 'in case the owner of any homestead shall die intestate, leaving a widow and no children, such homestead shall descend to his widow.' . . . The husband dying intestate and without issue, the widow is his heir by the statute of descents in force when ch. 270 was enacted, and would inherit the homestead without the provision above cited. That provision was manifestly inserted for the purpose of exempting the homestead, should the widow inherit it under the statute of descents, from liability to be sold for the debts of the deceased husband; and not to increase or extend her rights in the homestead as a homestead. It is merely an immunity in her favor in respect to a particular kind of property, and the statute would have accomplished the same purpose had the immunity been inserted in the statute of descents, or in that for the sale of lands by administrators to pay the debts of their intestates. It does not, we think, enlarge her estate, present or prospective, in the homestead as such. That terminates in every case when she marries or dies. If she inherited the whole estate, it goes to her heir or devisee, not by virtue of her homestead right, but because she owned the whole estate under the statute of descents."

If we were called upon to construe this statute as an original proposition, we might reach a different conclusion from that reached by the court in *Ferguson v. Mason,* but that decision established a rule of property and should not be disturbed. *Jerdee v. Furbush,* 115 Wis. 277, 281, 91 N. W. 661. The law of 1864 is substantially a re-enactment of the law of 1858, with some modifications, but on the main proposition involved the construction placed on the latter act is to all intents and purposes a construction of the former one. We conclude that Swank's widow took a life estate in the homestead which was not affected by her second marriage.

The estate of Elijah Swank was administered and the county court, acting no doubt on the supposition that the statute of 1858 gave the fee in the homestead to the widow, entered an order of distribution by which the land in controversy was assigned to the widow. It is argued that Mrs.

Dobbs was in possession of the land for a period of ten years claiming title under this judgment, and that she thereby acquired ownership of the land by adverse possession under color of title under sec. 4211, Stats. (1898). There are several answers to this contention: The present defendants were not before the court so as to give this order any binding or conclusive effect against them. Moreover, the order was wholly vacated and set aside at the instance of a creditor within a short time after its entry, and we fail to see how it can be said to be existent for some purposes and nonexistent for others. Then there is no competent evidence to show that Mrs. Dobbs ever founded any claim of title or right of possession on this order or judgment.

It is also urged that Mrs. Dobbs acquired title by adverse possession for more than twenty years, under the provisions of sec. 4214, Stats. (1898). The proof wholly fails to sustain this contention. The widow took a life estate in the homestead and rightfully continued in possession of the same until her death. The remaindermen had no right to interfere with that possession and no reason to assume that the life tenant claimed anything other than a life estate. There is no evidence that they were ever even apprised by the occupant or any one else that her possession was hostile or adverse or that it was not lawful. Life tenants who occupy real estate cannot cherish a secret purpose to acquire the fee in the estate and at the end of twenty years say that they have accomplished that purpose because they intended that their possession should be adverse and hostile to the owner of the fee. Notice of the adverse character of the occupancy, actual or constructive, or knowledge of facts sufficient to put a prudent man on inquiry, must be brought to the knowledge of the remainderman in order to defeat his title. No such evidence was offered. There was an item of competent evidence given by an incompetent witness, to the effect that Mrs. Dobbs always claimed to own the forty in dispute. This evidence

should have been stricken out on a motion that was made, but in any event it fell far short of establishing a case of adverse possession on the part of the life tenant against the remaindermen.

The foregoing disposes of all the considerations urged in support of the judgment that we deem it essential to discuss. A part only of the heirs of Elijah Swank have appeared and answered in this action, and it is only those who have appeared that are appealing from the judgment. Manifestly we can grant no relief to those who are not asking for it and who are not complaining of the judgment.

*By the Court.*—The judgment of the circuit court is reversed as to those defendants who appeal therefrom, and the cause is remanded with directions to the circuit court to enter judgment in favor of the appellants for the *pro rata* share of the land in question which they are entitled to receive as heirs of Elijah Swank, deceased.

The following opinion was filed October 24, 1911:

PER CURIAM. The respondents moved for a rehearing on the merits. The appellants moved for a rehearing and for a modification of the mandate. Respondents' motion is denied. Appellants urge that the mandate would operate to bar those heirs of Elijah Swank who were in default from applying to the circuit court to have their default excused and to be allowed to defend the action as provided in sec. 2833, Stats. (1898). It was not the intention of the court to deprive the defendants who failed to answer of their rights in the trial court, if any they had, under the above section. To save any question that might arise under the former mandate, it is amended by adding at the end thereof the following sentence: "This mandate is made without prejudice to the heirs of Elijah Swank who were in default when the action was tried, to pursue any remedy they may have under or by virtue of sec. 2833, Stats." No costs are allowed either party.