CHASE, Respondent, vs. DOXTATER and wife, Appellants.

*October 7, 1911—January 9, 1912.*

*Indians: Allotted lands: Patent: Agreement for sale: Evidence: Debt due vendor: Garnishment: Joint judgment debtors.*

1. Delivery, by an Indian to his agent, of a deed conveying land which had been patented to the Indian, pursuant to an agreement under which the agent had procured the issuance of the patent, had advanced moneys to the Indian and to pay claims against him, and after issuance of the patent was to buy the land or find a purchaser for it and account for the purchase price, created a debt, due at the time of such delivery of the deed, from such agent to the Indian for the balance of the price of the. land; and such debt was subject to garnishment by a creditor of the Indian.

2. The federal statutes making void any deed or contract touching allotted land while it is still in trust by the government, and providing that land which has been patented in fee simple shall not be liable for the satisfaction of any debt contracted prior to the issuance of the patent, are not applicable.
3. A debt due to one of two judgment debtors may be reached by garnishment and applied upon the judgment.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This is an appeal by *Doxtater* and wife from a judgment against the garnishee, in a garnishment proceeding ancillary to the main action brought by *Chase* against the *Doxtaters* upon a joint promissory note executed by them to *Chase* for $223.85. Judgment in the principal action for the amount of the note and costs was duly rendered. In the garnishee proceeding Wheelock answered, admitting that he was indebted to the main defendants in the sum of $223.85, being the remainder of the proceeds of the sale of a certain tract of land sold by him for the defendants, and brought the money into court. The *Doxtaters* also answered in the garnishee action, alleging that they were Oneida Indians, and that the money held by the garnishee was a part of the purchase price of the lands of *Ed. Doxtater* alone, that such lands constituted a homestead, and the proceeds of the sale were exempt under the homestead law; also that said moneys were not liable to garnishment or seizure for debt under the laws of the United States.

The issues were tried before the court without a jury, and there was little substantial dispute as to the facts, which may be briefly stated as follows: The defendants are Indians, and husband and wife. Forty-five acres of land were allotted to the defendant *Ed.* by the United States, and in January, 1909, he employed Wheelock, a real-estate agent, to procure for him, if possible, a patent in fee simple of the lands from the government, under the provisions of an amendment of the Dawes Act (so called), approved May 8, 1906 (34 U. S.

Stats. at Large, 182, ch. 2348, Fed. Stats. Ann. Supp. 1909, 204), which allows the Secretary of the Interior, when satisfied that an Indian allottee is competent to manage his own affairs, to cause to be issued to him a patent in fee simple of his allotted lands. By this agreement of employment Wheelock agreed to advance to *Ed.* some money, pay certain claims of third persons against *Ed.,* secure credit for him, and (if the patent was secured) buy the lands or procure a purchaser for them at a price to be agreed upon and account to *Ed.* for the purchase price. In pursuance of this agreement Wheelock advanced some money to *Ed.,* and at various times paid bills at *Ed.'s* request, and in the summer of 1909 went to Washington to prosecute the application for a patent. June 8, 1909, the *Doxtaters* gave to the plaintiff, *Chase,* the note on which the judgment in the main action is based. The patent was issued and received by the Indian agent about October 9, 1909. Wheelock and *Ed.* went to the agent together and obtained the patent, and Wheelock was allowed to keep it in his custody. After some dickering it was agreed between them that the land was to be sold for $1,250. Wheelock in fact agreed to sell it to one Wilcox for the last named sum, but it is not clear that *Ed.* knew of this arrangement. Whether he did or not, it is perfectly clear from the testimony of both parties that *Ed.* expected to receive the $1,250 from Wheelock, and really knew no one else in the transaction. A deed was made out and executed by *Ed.* and his wife October 11th, and taken by Wheelock. *Ed.* testifies it was a deed in blank, but Wheelock testifies that Wilcox's name was written in. *Ed.* further testifies that when Wheelock took the deed the agreement was that he (Wheelock) was to pay the whole sum of $1,250 in cash. Wheelock phrases it somewhat differently, but really to the same effect, namely, that *Doxtater* looked to him (Wheelock) to turn over the money to him. He (*Ed.*) had no dealings with Wilcox. Wheelock in fact did not receive any money from Wilcox until October 15th, but in the

meantime he proceeded to pay claims against *Ed. Doxtater* at his request out of the $1,250 purchase price, just as though he had the money in his hands. The total sum thus paid out October 11th and 12th, together with the sums previously paid out on *Ed.'s* request and the amount of Wheelock's compensation for his labor and a small sum then paid to *Doxtater,* left the sum of $223.85 out of the purchase price of $1,250. This sum was reserved, with *Doxtater's* consent, to pay the note of the plaintiff, *Chase,* but on consulting attorneys *Doxtater* concluded to countermand his consent and notified Wheelock not to pay the money to *Chase.* Thereupon the main action was brought by *Chase* and Wheelock garnished October 12, 1909. Wilcox paid the $1,250 to Wheelock October 15, 1909. There was no proof that the land was a homestead.

The circuit court on these facts held that Wheelock was indebted to *Ed. Doxtater* at the time of the service of the garnishee summons in the sum of $223.85, and directed that the clerk pay over that sum, which, as before stated, had been deposited in court, to the plaintiff, *Chase.* From this judgment the *Doxtaters* appeal.

For the appellants there were briefs by *Sheridan, Evans & Merrill,* and oral argument by *P. Sheridan.*

For the respondent there was a brief by *Minahan & Minahan,* and oral argument by *E. R. Minahan.*

The following opinion was filed October 24, 1911:

WINSLOW, C. J. The conclusion of the trial judge seems unquestionably right upon facts which are practically undisputed. Although differing somewhat as to details, *Doxtater* and Wheelock agree that *Doxtater* had no concern with the sale of the land to Wilcox, but that it was understood that *Doxtater* was to deliver the deed to Wheelock and that Wheelock was to be responsible to him for the purchase price. *Dox-*

*tater* is the most certain of this, and says in so many words that Wheelock was to pay the $1,250 in cash on delivery of the deed.   The conduct of Wheelock in making payments out of the fund and in fact .administering the entire sum before the money had been received from Wilcox is only consistent with the idea that he (Wheelock) owed the money as soon as the deed was delivered to him.

There was absolutely no proof that the land was a homestead.   It is very plain, also, that the federal statute which makes void any deed or contract touching allotted land while it is still held in trust by the government (Dawes Act, 24 U. S. Stats. at Large, 388, ch. 119, 3 Fed. Stats. Ann. 494), as well as the statutes which provide that land which has been .patented in fee simple shall not be liable for the satisfaction of any debt contracted prior to the issuance of the patent (34 U. S. Stats. at Large, 182, ch. 2348, Fed. Stats. Ann. Supp. 1909, pp. 204–207), have no application here.

The contention is made that, even conceding that Wheelock was indebted to *Ed. Doxtater,* still garnishment proceedings cannot reach that debt and apply it on a judgment against *Ed. Doxtater* and his wife, *Louise Doxtater.*   In other words, that garnishment will not reach a debt due to one of two judgment debtors.   One or two courts have so held, construing peculiar statutes, but the consensus of authority is the other way.   Rood, Garnishment, § 155.

A person holding a judgment against two may cause the execution to be levied against the property of either.   *Davelaar v. Blue Mound Inv. Co.* 110 Wis. 470, 86 N. W. 185.

Garnishment is practically only an equitable execution brought for the purpose of reaching nonleviable assets.   There seems no sound reason why the nonleviable property of one of two judgment debtors may not be applied on the judgment, as well as his leviable property.   Furthermore, our statute seems to contemplate this very thing; for, in prescribing the

form of the garnishment affidavit, it provides that it shall be stated therein that the garnishee "is indebted to . . . the defendant, *or either or any of the defendants.*"    Sec. 2753, Stats. (1898).

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied January 9, 1912.