ESTATE OF DRAPER: F. DOHMEN COMPANY, Respondent, vs. DRAPER, Administratrix, Appellant.

*March 12—June 22, 1925.*

*Executors and administrators: Administratrix continuing business of deceased: Payment to creditor furnishing goods: Whether on old account or new purchases: Competency of witness: How challenged: Right to have incompetent testimony stricken: Harmless error.*

1. Where an administratrix, who was the wife of a deceased druggist, took over and continued to operate the drug store without authority of the court, and continued to purchase from a creditor of the drug store, a finding that payments made by her were for goods purchased by herself and not in discharge of a claim against the estate is *held* to be sustained by the evidence, the credibility of witnesses being within the province of the trial judge, and there being no clear preponderance of evidence against the findings which would justify a reversal.  p. 345.

2. Testimony of the cashier and credit man of the holder of a note, claimed to have been given by the deceased for a cash loan, is sufficient to prove its execution, notwithstanding he did not answer a question submitted as to whether he knew the signature of deceased, where such cross-examination was not pursued.  p. 345.

3. An objection that evidence is irrelevant does not raise the question of the incompetency of a witness.  p. 346.

4. Although a witness testifying to the execution of a note may have been incompetent, in which case his testimony should have been stricken on motion, error in refusing such motion will not be considered where the execution of the note was proved by the testimony of another witness.  p. 346.

5. The right to have incompetent evidence stricken is an important right, not resting in the discretion of the court.  p. 346.

APPEAL from a judgment of the county court of Milwaukee county: M. S. SHERIDAN, Judge.  *Affirmed.*

The cause was submitted for the appellant on the brief of *Hugo J. Trost,* attorney, and *Olwell & Brady* and *George A. Gessner,* of counsel, all of Milwaukee, and for the respondent on that of *Friedrich & Hackbarth* of Milwaukee.

The following opinion was filed April 7, 1925:

JONES, J.    This action is based on a claim against the estate of William C. Draper, who died intestate on August

12, 1920, leaving as his heirs at law his widow and a daughter. For some years before his death he had conducted a retail drug business under the name of the Draper Drug Store, in the city of Milwaukee. At the time of his death it is conceded that he owed the claimant $1,736.63 on open account. The claimant also held an overdue note in the principal sum of $500 on which some payment of principal and interest had been made. On the death of Mr. Draper the store was closed for about twenty-four hours. Thereupon *Mrs. Draper,* the widow of the deceased, reopened it and continued the business in her own name. On September 16th she was appointed administratrix and continued to operate the store until February 4, 1921. No order or consent of the court was obtained permitting her so to do. She conducted the business as if it were her own. She purchased merchandise and sold it in the ordinary course of business and collected accounts. She deposited the moneys received in a bank in the account of her deceased husband.

Soon after the death of Mr. Draper a representative of the claimant saw *Mrs. Draper* and had conversations with her, at which times some agreement was made the terms of which are in dispute. The agent of the claimant testified that it was agreed that *Mrs. Draper* should pay, for what goods she should receive, by the month, and that any other payments made should apply on the old account. *Mrs. Draper* denied this agreement, but testified that in these conversations she told the agent of the claimant that she was going to run the store for the purpose of paying the bills of the estate; that she had found the bills larger than she had anticipated and would pay as fast as the money came in. The claimant continued the account on its books in the name of the Draper Drug Store or William C. Draper, and the payments made by *Mrs. Draper* were entered on this account. The claimant continued to deliver goods to the store after the death of Mr. Draper, and the value of the goods delivered after this time amounted to $2,002.08, and the total cash and credits on the account after that time amounted to $2,450.42. *Mrs. Draper* made payments by her personal checks on the Draper Drug Store bank account.

Judgment was rendered on the account in the sum of $1,281.38 and on the note for $400, with interest upon both amounts.

Counsel for the claimant contend that the payments made by *Mrs. Draper* were, according to agreement, to be first applied to the goods furnished to her, and that only the excess over such payments was to be applied to the discharge of the old account, and that this excess has been so applied, leaving the account due of $1,281.38 with interest. Counsel for the estate argue that the agreement was that the payments should be applied to the indebtedness of the William C. Draper account; that it had been fully paid; that no claim was provable against the estate, and that any balance was the individual indebtedness of *Mrs. Draper.* Certain bills or statements were furnished *Mrs. Draper* by the claimant dated September 1, October 1, and November 1, 1920. It is ably argued by the appellant's counsel that they show that the payments made by *Mrs. Draper* were applied in payment of the old account. In these bills there was no segregation of the two accounts. In the absence of any agreement or explanation it might fairly be inferred from the form of the statements that the payments by *Mrs. Draper* had discharged the old account in the month of November. These payments were more than sufficient for that purpose by about $170. However, there was no statement to that effect, and it is only by careful analysis of the bills and accounts that such a conclusion can be reached. On January 1, 1921, claimant sent a bill in which the amount claimed to be due from the William C. Draper estate was $1,281.38 besides interest, which is the amount now claimed. Although the statements relied on by the counsel for the estate afford some corroboration of the testimony of *Mrs. Draper,* we cannot accept the view that they are conclusive. The trial court had before it the books of the claimant and the statements already mentioned, as well as the witnesses who testified to the agreement. The court believed the testimony given in behalf of the claimant as to this agreement and held that the testimony of *Mrs. Draper* "was unsatisfactory, evasive,

and contradictory," and that she appeared as a witness thoroughly unreliable. The court found that the estate was solvent. We do not find any misconception as to matters of law, since the parties had the right to make the agreement relied on by the claimant. On the evidence the trial judge might have found for the estate, but the subject of the credibility of the witnesses was within his province, and we find no 'such clear preponderance of evidence against the findings as would justify a reversal on the questions of fact.

Counsel for the estate argue that the sales made to *Mrs. Draper* individually after the death of her husband could not be a basis for a provable claim against the estate; that as the administratrix she could not conduct the retail business or impose any obligation upon the estate; and that such conduct was in violation of her trust. In view of the conclusion we have reached it is unnecessary to discuss these questions. It is clear from the evidence that the agreement between the claimant and *Mrs. Draper* was made with her individually and not as administratrix, and no claim is made against the estate for goods bought after the death of the deceased.

Counsel for the estate object that there was not sufficient proof of the execution of the promissory note. The cashier and credit man of the claimant was shown the note and testified that it was signed by the deceased, giving the date of its execution. He stated that a check was given for the note and stated the amount of the payments and the amount due. The note was then introduced in evidence. All this was without objection. On cross-examination he testified that the note had been carried by the claimant; that it was given as a cash loan and that the books did not show the transaction. He was asked, "Did you know the signature of William C. Draper?" To this question no answer was given. Another witness, a bookkeeper of the claimant, was called who testified to a conversation with Mr. Draper in which arrangements were made for the loan and that the note was signed by Mr. Draper in the presence of the wit- .

ness. The only objection was that the testimony was irrelevant, although later counsel moved to strike out the evidence on the ground of the incompetency of the witness. It is argued that the testimony of the first witness was a mere conclusion and that because he did not answer the question as to the signature his entire testimony should be rejected. For all that appears the witness had personal knowledge of the facts. Counsel did not pursue the cross-examination to ascertain whether the witness had or had not such knowledge and we do not consider that the court was bound to disregard the evidence. As to the other exception, it is well settled that the objection that testimony is irrelevant does not raise the question of the incompetency of the witness. In this case, when the objection was made counsel brought to the attention of the court that Mr. Draper was deceased and afterward during the course of the trial moved to strike out the testimony. The right to have evidence stricken out is often an important one, not resting in the discretion of the court. In *Van Matre v. Swank,* 147 Wis. 93, 131 N. W. 982, 132 N. W. 904, it was held without discussion that competent evidence given by an incompetent witness should have been stricken out on motion. Since we hold that the execution of the note was proven by the testimony of another witness it is unnecessary to decide whether there was error in refusing the motion to strike.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 22, 1925.